CORA HAWTHORNE, complainant,

*v.*

EDWARD ODENSON and CHRISTINE ODENSON, defendants.

[Submitted April 9th, 1923.    Decided April 10th, 1923.]

1. Where a mortgage was given to secure the purchase-money for a conveyance with full covenants of warranty of title and against encumbrances, the mortgagor is entitled, in a suit to foreclose the mortgage, to a deduction for prior mortgages, taxes or judgments which constitute encumbrances in violation of the covenant.

2. Where a conveyance contained a warranty of title, and there has been an eviction by title paramount, the court will compel the mortgagee, in a suit to foreclose a purchase-money mortgage, to submit to an ascertainment of the damage arising from the existing breach of covenant, and will reduce to that extent the amount of the claim of the mortgagee, or, if an action is pending to try the title of the adverse claimant, the foreclosure suit will be arrested pending the result of such action.

3. In the absence of actual eviction or a pending action to try an adverse title, the foreclosure of a purchase-money mortgage will not be arrested by a defense of want of title in the vendor, in which case the covenant of title must be relied upon by the purchaser for recovery of damages in a court of law.

4. Where the purchase-money mortgagor has received less land than he bargained for, the mortgagee's claim will be reduced an equitable amount, even though the error was the result of mistake unaccompanied by fraud.

5. As a general rule, the purchaser's measure of protection in matters of title, in the absence of fraud, is in the covenants which he exacts from his vendor, which are not to be deemed as broken until eviction, and where he purchases without covenants of title the doctrine of *caveat emptor* must apply, and neither failure of or defects in title give ground for relief.

6. Though a fraudulent intent must be shown in an action at law for relief to recover for misrepresentations by a vendor as to the physical condition of the property, a court of equity may grant relief though the false representations in that respect were innocently made.

7. Where a conveyance of land is made containing full covenants and warranty of title, a misrepresentation by the vendor that the title is perfect will not ordinarily afford ground for equitable relief, if the vendor made the representations in good faith and believed they were true, and in such circumstances the purchaser will be deemed to have relied upon the covenants.

*94 N. J. Eq.*        Hawthorne *v.* Odenson.

8. Where a purchaser accepts a deed of conveyance containing a warranty of title expressly limited to claims under the vendor, the covenant, in effect, declares that the vendor does not warrant against a title paramount, and nothing short of a fraudulent intent of the vendor in representing his title to be good, or concealment where the duty of disclosure exists, can authorize relief for his misrepresentations as to the title.

9. Where the vendor's agent knew that the purchaser was an ignorant man and relied upon the vendor to furnish a proper contract and deed, it was unconscionable conduct for the. agent to submit to the purchaser a second contract more definitely describing the premises from which was omitted the provision of the first contract requiring covenants of full warranty, without calling attention to the omission, and to tender a deed containing only special warranty, knowing at the time that the special warranty was breached by a previous conveyance by the vendor, and that there was an outstanding paramount title against which the warranty gave the purchaser no protection, and, therefore, the purchaser is entitled to recover the purchase-money.

10. Though ordinarily neither a vendor nor a purchaser owes to the other any duty of disclosure and the mere circumstance of unequal business experience or mental powers does not defeat contracts made in the absence of natural or conventional trust relationship, there may arise from the circumstances of a transaction and the ignorance of one of the parties, and his trustful dependence in the other, a relationship of confidence which equity regards as essentially fiduciary and a violation of the obligations of which entitles a purchaser to recover the purchase-money.

11. Where a purchaser was entitled to rescind his purchase because of fraud of the vendor, he is entitled to a cancellation of the purchase-money mortgage given by him, and a return of the payments already made, and also to compensation for expenditures by him, against which he will be charged for the reasonable value of the use of the premises during the period of his possession.

12. Though the erection of valuable buildings on the property by the purchaser might defeat his right to rescind because of his inability to restore former conditions, the making of repairs of a minor nature, for which he can be recompensed, does not have that effect.

On final hearing on bill to foreclose.

*Mr. Orville P. DeWitt,* for the complainant.

*Mr. Joseph A. Corio,* for whom appeared *Mr. John C. Reed,* for the defendants.

Leaming, V. C.

The bill seeks foreclosure of a purchase-money mortgage. The deed of conveyance from complainant to defendant contains no covenant except that which is commonly known as a covenant of special warranty, that is, a covenant to defend against persons claiming under the vendor. Defendant claims a failure of title as to an essential part of the premises by a title paramount which does not fall within the covenants of the deed of conveyance. Also a failure of title of the entire premises by act of complainant falling within the covenant. Also certain fraudulent conduct on the part of complainant. Defendant has not been dispossessed and no suit is pending for that purpose.

The defenses available to a mortgagor, in the absence of fraud, in resisting the foreclosure of a purchase-money mortgage which has been given to his vendor for all or a portion of the consideration of a deed of conveyance to him for the same premises, when such deed contains full covenants of warranty of title or against encumbrances, have been frequently considered by the courts of this state. The adjudications will be found collected by the late Vice-Chancellor Stevens in *Kuhnen* v. *Parker, 56 N. J. Eq. 286.* It will be observed by the authorities there cited that it has been determined in cases of that class that where the deed of conveyance contains a covenant against encumbrances the mortgagor is entitled to a deduction for prior mortgages (*Stiger* v. *Bacon, 29 N. J. Eq. 442, 445*), for prior taxes (*Union Nat. Bank* v. *Pinner, 25 N. J. Eq. 495*), for prior assessments (*White* v. *Stretch, 22 N. J. Eq. 76*), and for prior judgments (*Dayton* v. *Dusenberg, 25 N. J. Eq. 110*). It has also been determined that where the deed of conveyance contains covenants of warranty of title, and there has been an eviction by title paramount, the court will compel the mortgagee who is seeking foreclosure to submit to an ascertainment of the damage arising from the existing breach of covenant, and will reduce to that extent the amount of the claim of the mortgagee (*Coster* v. *Monroe Manufacturing*

*Co., 2 N. J. Eq. 467*); or if an action is in fact pending to try the title of an adverse claimant the foreclosure will be arrested pending such action. *Jaques* v. *Esler, 4 N. J. Eq. 461; Price* v. *Lawton, 27 N. J. Eq. 325; affirmed, 28 N. J. Eq. 581.* But in the absence of actual eviction or a pending action to try an adverse title the foreclosure will not be arrested by a defense of want of title in the vendor. In such cases the covenants of title must be relied upon by the vendee for recovery of damages in a court of law. *Price* v. *Lawton, supra.* It has also been determined that where the mortgagor has received by his deed of conveyance less land than he bargained for the mortgagee's claim will be reduced an equitable amount, even though the error was the result of mistake and unaccompanied by fraud on the part of the mortgagee. *Couse* v. *Boyles, 4 N. J. Eq. 212; McMichael* v. *Webster, 57 N. J. Eq. 295.* This is sometimes referred to as the right of partial rescission.

It will be observed that all of these restricted defenses available to a mortgagor in a foreclosure suit of a purchase-money mortgage (save that relating to a deficiency of acreage of land) have reference to and are dependent upon the covenants of the mortgagee in his deed of conveyance to the mortgagor; a breach of covenants of title being considered as sufficiently established when there has been an eviction through a title paramount, and a breach of a covenant against encumbrances being considered as sufficiently established by the existence of a prior encumbrance. The defense of deficiency in acreage, when the error in the deed is not the result of fraud, appears to be entertained as falling within the equitable jurisdiction to relieve from mutual mistakes.

The general rule appears to be that in the absence of fraud, when a sale of real estate has been consummated by the execution and delivery of a deed of conveyance, the purchaser's measure of protection in matters of title to the land is to be found in the covenants which he exacts from his vendor, and such covenants are not to be deemed as

broken until eviction. In buying without covenants of title, the doctrine of *caveat emptor* must apply, and neither failure of, nor defects in title, in the absence of fraud, affords ground for relief; and this rule applies equally whether the money has been paid or is secured to be paid. *Phillips* v. *City of Hudson, 31 N. J. Law 143, 150; Slocum* v. *Seymour, 36 N. J. Law 138, 141;* see also *Barkhomsted* v. *Case, 5 Conn. 528; McDonough* v. *Martin, 88 Ga. 675,* and authorities there collected. In the latter case it is also held that even in a jurisdiction in which words of grant imply covenants of title, no such covenants can be implied where an express but qualified covenant of title exists, and also that a statutory provision that words of grant shall import certain covenants is overcome by an express but qualified covenant. See, also, *Baldwin* v. *Johnson, 1 N. J. Eq. 441, 454; Havens* v. *Bliss, 26 N. J. Eq. 363, 372.*

But in addition to the defense of failure of title, defendant has filed a counter-claim in which he alleges fraud on the part of complainant, and seeks a decree rescinding the transactions between the parties by having the deed which was made to him by complainant and the mortgage which was made by him to complainant canceled, and also prays for a restoration to him of all moneys paid by him to complainant and also seeks recovery of certain moneys which have been expended by him for improvements on the property in question.

The fraud asserted by defendant is the claim that when he agreed to purchase the property the agent of complainant represented to him that the title to the land was good and that no searches were necessary; that defendant relied upon these representations and thereafter executed all papers presented to him by complainant without knowing their contents and wholly depending upon complainant's promise to convey a good title.

A broad and well-defined distinction exists between the relief that can be awarded to a vendee of real estate who has been injured by reason of misrepresentations of his vendor

touching material matters relating to the physical condition of the property and the relief that can be awarded by reason of statements made by a vendor, declaring his title to be good. For the former class of misrepresentations in an action at law for deceit, a fraudulent intent must be shown; in a court of equity, relief may be granted although the false representations were innocently made. *Cowley* v. *Smith, 46 N. J. Law 380; Eibel* v. *Von Fell, 63 N. J. Law 3; affirmed, 64 N. J. Law 364; Eibel* v. *Van Fell, 55 N. J. Eq. 670; DuBois* v. *Nugent, 69 N. J. Eq. 145.* But where a conveyance of land is made containing full covenants and warranty of title, a representation by the vendor that the title is perfect will not ordinarily afford ground for equitable relief if the vendor made the representations in good faith and believed that the representations so made were true, since in such circumstances the parties will appropriately be deemed to have relied upon the covenants of title. The difficulty in assuming that the vendee relied upon the statements touching the title, when at the consummation of the transaction he exacted a deed with covenants of title for his protection, is pointed out in *Gihon* v. *Morris, 90 N. J. Eq. 230.* See, also, to the same effect, *Andrus* v. *St. Louis Smelting Co., 130 U. S. 643,* where it is stated that in such cases the prior representations of the vendor, touching his title, are merged in the warranty and covenants which determine the extent of his liability. Where the deed, which is accepted by a vendee, is wholly without covenants, it would seem to be in no way inconsistent with the inferences incident to the transaction to accept the claim of the vendee that false representations touching the title were made and relied upon by the vendee.

But when a vendee accepts a deed of conveyance containing a warranty of title which is expressly limited to claim under the vendor, and thus specifically defines the extent of the vendor's liability, the negative element of the covenant, which in effect declares that the vendor will not warrant against a title paramount, so forcefully appears as the final

contractual measure of the vendor's obligations and as in effect merging declarations of the vendor touching his title into the restricted covenant (as suggested in *Gihon* v. *Morris,* and *Andrus* v. *St. Louis Smelting Co., supra*), that nothing short of fraudulent intent on the part of the vendor in representing his title to be good, or concealment where the duty of disclosure exists can appropriately be made the foundation of relief. This appears to be the view generally, though not uniformly, adopted. In *Edwards* v. *McLeary, G. Cooper 308* (*36 Eng. Reprint 625*), cited by defendant, the relief is expressly based upon the fact that the vendor knew that a portion of the land, which portion was essential to the enjoyment of the remaining part, was within a common, and concealed that fact from the vendee, and that that fact could not be discovered by the abstract. See, also, the same case on review. *2 Swans. 287* (*36 Eng. Reprint 625*). *Gibson* v. *D'Este, 2 Y. & C. C. C. 542* (*63 Eng. Reprint 243*), also cited by defendant, was reversed in *1 H. L. C. 605* (*9 Eng. Reprint 897*), *sub nom. Wilde* v. *Gibson.* The reversal was expressly upon the ground that the misrepresentations touching the title were innocently made.

The evidence in this case discloses that under date of February 22d, 1919, a written contract of sale was signed by complainant and defendant, whereby complainant agreed to convey to defendant the property here in dispute for $2,200, payable as follows:

"Amount paid on execution of contract, $150; additional cash on delivery of contract, $350; balance payable $150 yearly with interest at six per cent. per annum. Deed to be delivered after half has been paid.'

"And the said party of the first part, on receiving such payments at the time and in the manner above mentioned, shall at her own proper cost and expenses execute, acknowledge and deliver to said party of the second part, or to his heirs and assigns, a proper deed containing a general warranty and the usual full covenants for the conveying and assuring to them the fee-simple of the said premises free from all encumbrance.

"Contract shall be delivered on the 8th day of March, 1919, at one o'clock P. M., at the office of Harry L. Murphy, in the city of Hammonton, N. J."

This agreement was signed by both complainant and defendant and the $150 first payment was made. The contract was not acknowledged. Why it called for the execution of another contract before the deed was to be delivered does not appear. The contract is complete in its terms except that it describes the land by a general and abbreviated description; the need of a more formal contract is not apparent, unless it should be for a more complete description of the land and for the signature of complainant's husband. But a second contract is clearly called for. Defendant has testified that when he signed this contract he asked the agent who negotiated the sale about procuring searches, and that the agent replied that no searches were necessary as the title was all right. Defendant further states that he relied upon that representation touching the title and ordered no searches for that reason. The agent has testified that he has no specific recollection in the matter; but that he always advises searches. On or about the 3d day of March, 1919, a typewritten contract, drawn in duplicate and executed and acknowledged by complainant and her husband under date of March 3d, 1919, was sent by mail by complainant's attorney (not the agent who had negotiated the sale and prepared the contract above referred to) to defendant for him to sign. Defendant signed them and by mail returned one copy to complainant. This appears to have been five days prior to the date called for in the original contract. This second agreement is a carefully prepared and formal contract of sale in which complainant and her husband agree to convey to defendant the land here in question, which land is fully described—the description in the former agreement having been much less specific—and in which defendant agrees to pay $2,200 as follows:

"Five hundred dollars at the signing and delivery of this agreement, the receipt of which is hereby acknowledged, and the remainder in annual payments of one hundred and fifty dollars each, together with interest at six per cent. per annum, payable semi-annually, and said second party shall keep the buildings on said place insured in some reliable fire insurance company in an amount not less than eight hundred dollars, in the name of the said first parties hereto."

The agreement then proceeds:

"It is mutually agreed by and between the parties hereto that when the party of the second part shall have paid eleven hundred dollars to the party of the first part on account of this agreement, the party of the first part will well and sufficiently convey by deed said premises to said party of the second part and accept the bond and mortgage thereon of said second party for eleven hundred dollars, payable not less than one hundred and fifty dollars annually, together with interest at the rate of six per cent. per annum, payable semi-annually, together with all taxes and legal assessments that may hereafter be levied against said premises."

Then follows:

"It is further mutually covenanted and agreed by and between the parties hereto, that in case default shall be made in the payments of principal or interest at the time, or any of the times above mentioned for the payments thereof and for sixty days thereafter, this agreement, and all preceding provisions thereof, shall be null and void and no longer binding, at the option of said party of the first part, their executors, administrators or assigns, without further notice whatsoever, and all payments which shall then have been made thereon, or in pursuance hereof, absolutely and forever forfeited to the said party of the first part, and shall be considered as rent paid for use and occupation of said premises, and the party of the second part shall be liable to be dispossessed of said premises as for non-payment of rent and termination of said tenancy at the election of the party of the first part, their executors, administrators or assigns, and may be enforced and the consideration money hereinabove specified, collected by proceedings in law or equity against said party of the second part, his heirs, executors, administrators or assigns."

It will be observed that while this contract specified the terms of payment essentially the same as the other contract, it contains a number of stipulations not contained in the former contract and wholly omits the former stipulations touching covenants of title and against encumbrances.

About August 27th, 1920, complainant forwarded to defendant, by mail, a deed of conveyance for the property, duly executed and acknowledged on that date, accompanied by a purchase-money mortgage bearing the same date, and an accompanying bond to be executed by defendant and returned to complainant The deed was retained by defendant and the bond and mortgage were executed by him and returned as

directed. At that time, defendant had paid but $800 on account of the purchase price. By each of the two contracts he was not entitled to a deed until he had paid $1,100. Why the deed was earlier delivered does not appear. The mortgage secures the payment of the $1,400 balance then due complainant, and is made payable one year from its date. Defendant claims that he has since reduced the mortgage to $1,250. It is that mortgage which complainant now seeks to foreclose.

Defendant also has testified that he signed the second contract without knowing what it provided and accepted the deed and signed the bond and mortgage without knowing their effect, and signed the bond and mortgage believing that the mortgage was payable in installments in accordance with its contract. It was not until this foreclosure was started, he says, that he learned that the mortgage was not payable in installments and learned that his deed gave him no protection. He then ordered searches and found that complainant was without even paper title to a large part of the land, and had also made to another person a deed of conveyance for all the land, which deed had been made and recorded before complainant's sale to defendant. Defendant is an illiterate man and dull of comprehension, and claims to have executed the second contract and accepted the deed and to have executed the bond and mortgage wholly in reliance upon and because of his faith in complainant's integrity, and believing the title to be good because told so by complainant's agent. Complainant makes no explanation as to why the terms of the original contract were changed or as to why the condition of the mortgage did not conform to the condition set forth in both contracts; she seems to have left the preparation and procurement of the papers to others. The land conveyed to defendant comprises two adjacent tracts, one containing about two and one-half acres, the other about seven acres; the two tracts are essentially one tract comprising a house and farm land.

The evidence discloses that the only title complainant ever had to the tract of nine acres is under a deed from Galen

Parkhurst, and that Parkhurst's only title was under a tax deed from Mullica Township, dated October 27th, 1893, for a term of twenty years from October 12th, 1891. That title accordingly ended by the terms of that conveyance October 12th, 1911.

The evidence also discloses that by an instrument endorsed "Confirmation of Agreement," dated March 16th, 1918, and recorded on that date, complainant and her husband conveyed by deed of special warranty both tracts of land here in question to Louis Nickman and Philip Bessor.

Defendant has been and is now in possession, and so far as is known no one is claiming title adverse to defendant. The reversioner in the tax title and the grantees in the deed last referred to appear to be unknown. It is accordingly clear, under the authorities above cited, that no relief can be afforded defendant unless that relief be based upon fraud.

The material facts are reasonably obvious. Notwithstanding defendant's testimony it may appropriately be doubted that the real estate agent told defendant that the title was good and that he needed no searches. With defendant's want of education and business experience, it is doubtful whether at that time he knew of such a thing as a search, or the purpose of searches. He was buying land and expected to get what he bought and obviously relied upon those he dealt with to see that he got what he bought. Further than that, I find it difficult to go. The first agreement was prepared by filling in the blanks of a printed agreement of sale of land, and a printed clause in that blank called for "a proper deed containing a general warranty and the usual full covenants for the conveying and assuring of them [him] the fee simple of the said premises, free from all encumbrances." I doubt whether defendant saw or at the time knew of that stipulation, or would have known its meaning had it been read to him; but the real estate agent necessarily knew of it and of its meaning. It accordingly became a part of that written contract. If, indeed, the statements attributed to the real estate agent touching the title were in fact made, such statements, accompanying a contract calling for title

warranty, afford feeble grounds for relief. For some unexplained reason the agreement called for a new agreement to be executed by a certain date, on which date an additional payment was to be made. But nothing in the original contract or in the testimony in any way suggests that the second instrument was to be the result of further negotiations or to omit or change any of the contractual stipulations of the first. The primary object of the new contract appears to have been to amplify the description of the land. In the absence of further negotiations the new agreement could appropriately amplify, as it did, the description of the land, and could be signed by the husband of complainant and acknowledged, as it was; but without some new consideration or some further negotiations between the parties it seems impossible to find any adequate justification for the preparation of a second contract by complainant or her attorney in which the material contractual stipulations of the original contract were radically changed and the presentation of such second contract to defendant for his signature without at least directing his attention to such changes. This is peculiarly so by reason of defendant's intense ignorance and inexperience in such matters and his obvious trustful dependence on complainant to prepare the necessary papers and deal fairly with him; and to follow up this second contract with a deed of conveyance containing only a special warranty of title, with no suggestions that the conveyance in any way differed from the one called for by the original written bargain between the parties seems equally unjustifiable under the circumstances already referred to. If any fraud is to be found in this case which may afford relief to defendant, it is to be found in effecting in the manner stated a conveyance without either a good title or the covenants called for by the original contract. This was unquestionably accomplished through defendant's intense ignorance and trustful attitude. Since the original contract called for a conveyance with full warranty of title, the rule of *caveat emptor* no longer obtained. Defendant relied upon complainant's attorneys (who prepared the second agreement and the deed and

mortgage) to look after his interests and signed all papers prepared for his signature in trustful confidence of their sufficiency; in his ignorance the papers he so signed were to him meaningless. He bought the property and made substantial payments in good faith and got nothing but a covenant of special warranty, which had already been broken when it was made, and which complainant necessarily knew was broken since she had made the deed which broke it. The part of the tract covered by the tax deed is essential to the remainder of the tract; as to that part of the tract defendant got nothing by his purchase, since the covenant does not extend to it. In this foisting upon this ignorant defendant a worthless title with covenants inadequate for his protection when his original duly executed contract was expressly and clearly for a conveyance with full covenants complainant procured her advantage by dealing with defendant in an unfair and unconscionable manner which is in equity classed as fraudulent.

It is not to be overlooked that in ordinary or normal circumstances neither a vendor nor a vendee owes to the other any duty of disclosure; nor is the mere circumstance of unequal business experience or mental powers of the parties to be made the basis of unseating contracts or conveyance actually made in the absence of natural or conventional trust relationship between the parties and its abuse. But in the absence of any of the ordinary fiduciary relations as well as in transactions which are not in their essential nature fiduciary there may arise from the circumstances of a transaction and from the nature of the dealings of the parties or their position towards each other a trust and confidence in the particular case which equity regards as essentially fiduciary. This class of trust relations is defined by Prof. Pomeroy in *2 Eq. Jur.* § *902,* and is expressly approved by our court of errors and appeals in *Keen* v. *James, 39 N. J. Eq. 527, 541.* When these conditions arise the ignorance of one of the parties and his trustful dependence upon the other becomes of the utmost importance. Vice-Chancellor Green, in *Mott* v. *Mott, 49 N. J. Eq. 192, 198,* approves and quotes from *Billage* v. *Southee, 9 Hare 534,* as follows: "The jurisdiction is founded on

the principle of correcting abuses of confidence, and I shall have no hesitation in saying it ought to be applied, whatsoever may be the nature of the confidence reposed or the relations of the parties between whom it has subsisted. I take the principle to be one of universal application, and the cases in which the jurisdiction has been exercised, those of trustee and *cestui que trust,* guardian and ward, attorney and client, surgeon and patient, to be merely incidents of the application of the principle." That learned vice-chancellor further approves and quotes from Lord Eldon in *Gibson* v. *Jeyes, 6 Ves. 266, 278,* as follows: "It is that great rule of the court that he who bargains in a matter of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence—a rule applying to trustees, attorneys, or any one else."

In this case I think the evidence fully justifies the conclusion—whether or not it is believed that at the time the original contract was signed by defendant, and the first installment was paid, it was represented to him as he states, that the title was good and that he need not take out searches, and that he relied upon such statements—that defendant's acceptance of the worthless title and the deed with restricted covenants and his execution of the purchase-money mortgage and its accompanying bond was procured by complainant or her attorney by unfair and unjustifiable means of a nature to be properly classed in a court of equity as fraudulent. In such circumstances such equitable relief as is found to be just should be afforded by a court of equity even though there has been no eviction. *O'Brien* v. *Hulfish, 22 N. J. Eq. 471.*

The delay of defendant in seeking a decree of rescission is adequately accounted for. The failure of title was not known by defendant until the foreclosure bill was filed when searches were ordered by him.

The relief to which defendant is entitled is a decree which shall place the parties where they were. This includes the cancellation of the deed of conveyance and bond and mortgage and the repayment to defendant of the moneys which he has paid, with interest, and also an allowance for such expen-

ditures as defendant has made. Against this defendant will be charged for the reasonable value of the use and occupation of the premises during the period of his possession. See as to practice and the terms of the decree, *Gibson* v. *D'Este, 2 Y. & C. C. C. 542* (at *p. 581*); *63 Eng. Reprint 260; Hart* v. *Swain, L. R., 7 Ch. Div. 42, 47.*

The remedy of rescission involves a return to former conditions. The erection of valuable buildings on the property by the purchaser might defeat that remedy by the consequent inability to restore former conditions. *O'Brien* v. *Hulfish, supra.* But the repairs which this defendant has made are of a minor nature and have created no substantial change in the property; for these defendant should be recompensed. At the hearing testimony touching the cost of these repairs was given by defendant, and some doubts touching the cost were suggested by complainant. No testimony was given touching the value of the use and possession.

A reference will be made to a master to hear testimony and state an account between the parties. Let the master state his account on the basis above defined and wholly upon the testimony to be taken before him.