## Kentucky River Coal Corporation v. Swift Coal and Timber Company.

(Decided October 28, 1927.)

Appeal from Letcher Circuit Court.

1. Covenants.—Where contract to convey expressly provided that conveyances of respective tracts were to be made by deeds with covenant of special warranty, and deed in question contained only covenant of special warranty, no other warranty of title could be implied.

2. Covenants.—Where V., having life estate in land, conveyed property to S., and S. conveyed to plaintiff by deed, having covenant of special warranty, such covenant of special warranty did not protect plaintiff against claims of children of V. who recovered property from plaintiff after V.'s death, since, under Ky. Stats., section 493, covenant of special warranty protects grantee only from claims under title from grantor or those in privity with him, and not from claims under title against grantor.

3. **Vendor and Purchaser.**—Where V., having life estate, conveyed property to S., and S. conveyed to plaintiff, and, after V.'s death, her children brought suit against plaintiff and recovered property, plaintiff was not entitled to rescission, there being no fraud or bad faith on part of vendor; parties having simply misinterpreted legal effect of deed from V. to S.

JOHN D. CARROLL, MORGAN & HARVIE, and P. T. WHEELER for appellant.

R. MONROE FIELDS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In November, 1919, William McIntyre and his wife, Dianah McIntyre, conveyed to "Victoria Sumner and her children" a certain tract of land. In May, 1911, the McIntyres and Victoria Sumner conveyed the coal, minerals and certain mining rights and privileges under this tract of land to the appellee herein, Swift Coal & Timber Company. This company in 1914 was the owner of a' large number of coal leases and mining rights in Letcher county, as was also the Kentucky River Consolidated Coal Company. The holdings of both of these companies were somewhat scattered; the holdings of one being in some part intermingled with the holdings of the other. The two companies conceived it to be a good idea to trade holdings with one another, so that each company could get into one holding or adjoining holdings all its properties. They therefore, on the 7th day of July, 1914, entered into a contract whereby they agreed to exchange certain tracts aggregating about 1,000 acres, the exchange being made by the acre, and any difference in the acreage to be adjusted at the rate of $13 per acre. It was expressly provided in the contract that neither party could be compelled to accept any particular tract, unless the title thereto had been approved by that party's attorney. It was also expressly provided that the conveyances of the tracts were to be made by deeds with covenant of special warranty. Pursuant to this contract, the two companies did convey certain tracts to each other by a deed of special warranty. Among the tracts conveyed by the Swift Coal & Timber Company to the Kentucky River Consolidated Coal Company was the one which the Swift Coal & Timber Company had received in 1911 from the McIntyres and Victoria Sumner. In 1915 the Kentucky River Consolidated Coal Company conveyed this

same tract, also by deed of special warranty, to the appellant, Kentucky River Coal Corporation. In 1917 the appellant undertook to mine the coal from under this tract. Victoria Sumner had in the meantime died, and her children thereupon brought suit against the Kentucky River Coal Corporation, alleging that the deed of the McIntyres to "Victoria Sumner and her children" vested only a life estate in Victoria Sumner, with the remainder in fee to her children, and that, the life estate having fallen in, the Kentucky River Coal Corporation had no further title to the property. This contention of the children was upheld by this court in the case of Kentucky River Coal Corporation v. Sumner et al., 195 Ky. 119, 241 S. W. 820. The Kentucky River Coal Corporation then brought this suit against the Swift Coal & Timber Company seeking to recover on its covenant of special warranty the value of the acreage lost in this Sumner tract at the rate of $13 per acre, together with attorneys' fees and expenses incurred in defending the Sumner suit, or, if not entitled to this relief, to recover back from the Swift Coal & Timber Company so much of the land conveyed to the Swift Coal & Timber Company in exchange for this Sumner tract as amounted to the acreage of this Sumner tract. The lower court dismissed appellant's petition, and it has appealed.

We are met at the threshold of this case by the question of what is the extent of the obligation of a grantor on a covenant of special warranty in a deed he has made. It is common learning that the old common-law or feudal warranty fell into disuse after the passage of the statute of uses, and that the modern covenants for title thereafter took its place. These covenants made their first appearance in the time of Elizabeth. They were afterwards fashioned by the famous conveyancer Bridgeman, in his retirement during the Cromwellian times, and introduced with elaboration by him when he openly returned to practice during the restoration. During the reign of Charles the First and the Protectorate there was quite an emigration to this country. The colonists brought with them the yet lingering notions of the old common-law or feudal warranty, together with the ideas of the new covenants for title then being fashioned and destined to take its place. The modern covenant of warranty is in substance the ancient form of warranty with the addition of words of covenant. The covenant of warranty, however, as we in America know it today, had little or no

development in English conveyancing, the covenant of quiet enjoyment filling the field there occupied by the covenant of warranty in this country. That our covenant of warranty should be given the same effect as a covenant for quiet enjoyment in English conveyancing is as stated in Rawle on Covenants for Title (5th Ed.) p. 142, unquestionably the sounder view. Covenants for quiet enjoyment made their first appearances in leases, and were taken over later into deeds. Such covenants were either general or special, just as our present warranty is either general or special. When meant to be special, they were usually worded:

> "That the premises shall be quietly enjoyed without interruption of the grantor or lessor or his heirs or any person or persons whomsoever lawfully claiming or to claim by, from, or under him, them, or any of them or by or with his or their acts, means, consent, default, privity, or procurement."

Such a covenant was held to protect the lessee against a claim under a title from the lessor, but not against a claim under a title against the lessor. Stanley v. Hayes, 3 Q. B. 105.

Covenants of special warranty in deeds are in substance the same as the special covenant of quiet enjoyment above noted. By section 493 of our Statutes it is provided that a covenant of special warranty in a deed shall have the same effect "as if the grantor had covenanted that he, (or) his heirs and personal representatives, would forever warrant and defend the said property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of the grantors and all persons claiming, or to claim by, through, or under him."

This section of our statutes is but a re-enactment of section 7 of chapter 24 of the Revised Statutes of 1852, which, in turn, is only a statutory statement of the effect of the common-law covenant of special warranty.

Now in the days of the old feudal warranty such warranty was created without express contract of any kind. It was simply a natural incident of tenure. Later, when the transfer of law was authenticated by charters or deeds, a warranty was implied from the word of feoffment "dedi," whether the charter or deed contained the technical word "warrantizo" or not. But, after the an-

cient or feudal warranty had passed into the limbo, and the modern covenants of title had taken its place, it became the law that there is no implied warranty of the title in a deed of real estate. Sinking Fund Commissioners v. Northern Bank of Kentucky, 1 Metc. 174, at 192; 15 C. J. 1212. See, also, Ogden v. Yoder, 5 J. J. Marsh. 424. In Hawthorne v. Odensen, 94 N. J. Eq. 588, 120 A. 797, the rule is stated:

> "In buying without covenants of title the doctrine of caveat emptor must apply, and neither failure of nor defects in title, in the absence of fraud, affords ground for relief."

The purchaser must protect himself by such covenants as he deems necessary. In Thompson on Real Property, section 3464, it is said:

> "At common law, the only word that necessarily imported a covenant of title was the word 'give.' The word 'grant' did not imply a covenant nor the words 'bargain' and 'sell.' But since the statute of uses there have been no covenants by implication. The deed of bargain and sale then came into use and this is the deed in common use at the present time. Except as declared by statute, there are in this country no implied covenants."

See, also, Tiffany on Real Property (2nd Ed.) p. 1676 et seq.; Devlin on Real Estate (3d Ed.) section 953. None of the deeds involved in the case before us even used the word "give," but only the words "grant and convey."

It follows, from what has been said, that the terms of the covenant of special warranty, especially as defined in our statute, go no further than to protect the grantee from claims under a title from the grantor or those in privity with him, and do not protect against a claim under a title against the grantor. It is so held in Buckner v. Street (C. C.) 15 F. 365, and in Raymond v. Raymond, 10 Cush. (Mass.) 134. In 7 R. C. L., 1129, it is said:

> "Ordinarily, where a vendee receives but a special warranty or quitclaim conveyance, he takes the estate, subject to all the disadvantages that it was liable to in the hands of the vendor, and the law will presume notice of all incumbrances, either legal or equitable. The circumstances of a vendor refusing

to make a full and ordinary assurance is said to be sufficient to excite suspicion, and put the party upon inquiry.''

Nor, as we have seen, is there implied in a deed containing such a covenant any implied warranty of title. The cases of Bodley v. McChord, 4 J. J. Marsh. 475, and Arnold v. Maiden (abstractly reported in 5 Ky. Law Rep. 334, reported in full, 12 Ky. Op. 296), when analyzed, are not in conflict with these conclusions. In the Bodley case, Bodley contracted to convey with covenant of special warranty certain lands. Before he did convey the lands, McChord ascertained that Bodley had no title to them, and the question presented was whether McChord had the right to rescind the contract. The case was rested by the court on the proposition that, in a contract to convey land, even though by deed of special warranty, there is an implied warranty that the seller had a title good as against the commonwealth. But whatever may be the rule as to contracts to convey, it certainly is the rule that, when the conveyance has taken place, there is no implied covenant in the deed, especially so when an express covenant is inserted in the deed. As stated in the Hawthorne case, supra:

''The general rule appears to be that in the absence of fraud when a sale of real estate has been consummated by the execution and delivery of a deed of conveyance, the purchaser's measure of protection in matters of title to the land is to be found in the covenants which he exacts from his vendor. . . It is also held that even in a jurisdiction in which words of grant imply covenants of title no such covenants can be implied where an express but qualified covenant of title exists.''

In Andrus v. St. Louis Smelting Co., 130 U. S. 643, 9 S. Ct. 645, 32 L. Ed. 1054, it is stated that prior representatives of the vendor touching his title are merged in the warranty and covenants which determine the extent of his liability. See also 7. R. C. L. 1093. The Arnold case is difficult to analyze, since the statement of facts is so meager. We gather, though, that it was an action for rescission based on misrepresentation as to the state of the title and the fact that the seller had agreed to execute a deed of general warranty, but had failed to do so.

It must be admitted, though, that the court in the Bodley case, although it was not necessary or germane

to the actual question presented for decision, said that a covenant of special warranty was inter alia a covenant of title good as against the commonwealth. That a covenant of special warranty was not by its literal terms such at common law and a fortiori under the statute we have seen, and that there was no such implied covenant attached to it, is also plain under the authorities. The Arnold case simply used, without discussion, the language of the Bodley case.

In the instant case, the contract to convey had been carried into execution by a deed of conveyance. This deed contained only a covenant of special warranty. No other warranty could then be implied. The covenant of special warranty did not protect the grantee against the claims of Victoria Sumner's children. Nor was the buyer defrauded or misled by any representations of the seller. The contract gave information about the seller's chain of title, and the buyer knew the terms of the McIntyre-Sumner deed as well as did the seller. There was no concealment or misrepresentation about its terms. The buyer simply misinterpreted its legal effect as did the seller. But this is a far cry from fraud or bad faith. The contract clearly stated that the buyer was not to be required to take any of the property proposed to be conveyed, unless title to the same was approved by the buyer's lawyers; thus showing that the buyer did not rely on any interpretation of the McIntyre-Sumner deed entertained by the seller, but only on the report of its lawyer. There being no fraud or bad faith on the part of the seller, the buyer was not entitled to a rescission under the doctrine of the Arnold and Bodley cases, supra, and Jones v. Metzger, 132 Miss. 247, 96 So. 161.

It follows, therefore, that the lower court correctly dismissed the appellant's petition, and its judgment is affirmed.

Whole court sitting.