### JONES et al. v. ARTHUR et al.

Court of Appeals of Kentucky.
Dec. 14, 1951.

Cleon K. Calvert, Pineville, for appellants.

B. B. Snyder, J. C. Bird, Williamsburg, for appellees.

MOREMEN, Justice.

Appellants, filed a petition by which they sought an adjudication that they were owners and entitled to possession of certain land in Knox County. From a judgment which dismissed the petition, this appeal is prosecuted.

R. B. Kelsey and Elzora Kelsey were owners of the land here involved when, on October 10, 1921, they executed a note secured by mortgage to W. T. Hutton. On July 7, 1923, they executed a second mortgage to Mrs. E. C. McKeehan, mother of the appellees. On July 10, 1923, Hutton assigned his note and mortgage to Carbon Garage and Sales Co. which, on August 8, 1923, instituted suit to sell the property and apply the proceeds of sale to the satisfaction of the note. No lis pendens notice was filed under the authority of KRS 382.440. A judgment was entered on December 6, 1926, but the property was not offered for sale at that time and the action was not pressed to conclusion for many years.

On October 27, 1925, the Kelseys conveyed the land to J. C. Lay. This deed was attacked as being fraudulent in nature, but we held, Howard v. Kelsay, 230 Ky. 61, 18 S.W.2d 884, that the instrument conveyed a fee-simple title. On September 12, 1938, J. C. Lay conveyed by quitclaim deed this property to C. V. Jarvis and George V. Jones. This deed was lost and, on September 12, 1947, a substitute deed was delivered which was recorded on September 16, 1947. On December 12, 1948, Jarvis and wife conveyed their interest in the land to appellant Jones.

Meanwhile, on February 28, 1939, Mrs. McKeehan intervened in the suit, which had been filed by Carbon Garage and Sales Co., and set up her second mortgage. No sale of the property was had until June 18, 1945, at which time, appellees, who are the heirs of Mrs. E. C. McKeehan, purchased the property. On July 6, 1945, they received a deed from the master commissioner.

During all this time, R. B. Kelsey was in possession of the land and cultivating it. A writ of possession was issued and executed on December 14, 1945. However, about three weeks later, Kelsey re-entered the land and took possession of it which caused the McKeehan heirs, on February 10, 1948, to file an action in trespass against him. He failed to respond and judgment was entered fixing the ownership of the land in appellees.

Appellants suggest as grounds for reversal (1) that J. C. Lay, who purchased the property while a suit to enforce the terms of a mortgage was pending, was a necessary party to the suit as were also the appellants, and (2) the plaintiffs in the suit filed in 1923 were guilty of procrastination, the statute of limitations ran, and the mortgages were barred as to Lay and as to the appellants.

471

■ The first ground requires a consideration of the terms of the deeds through which J. C. Lay and appellants obtained their claim of title. The deed from Kelsey to Lay contained this phrase: "that the said parties of the first part (the Kelseys) for and in consideration of the sum of Ten Dollars ($10) cash in hand paid and other good and valuable considerations and the assuring of the payment of all mortgages and liens now existing against said property * * *." It is fair to assume that this language was sufficient to notify Lay that mortgages were outstanding. It was sufficient to require him to investigate the status of these mortgages because when he insured the payment of outstanding liens he assumed the complete obligation incident to them and this included accrued interest and court costs if any had attached by reason of the liens.

It is true that KRS 382.440 provides in substance that no action shall in any manner affect the title to, or the possession or use of, the right, title, or interest of any subsequent purchaser of such real property, for value and without notice thereof, except from the time there is filed in the office of the clerk of the county court in which such real property is situated, a memorandum which gives the style and number of the action and other information. In this case Lay was not a purchaser without notice of the mortgages and there was sufficient information in the deed to put him upon inquiry as to the status of the mortgages at the time the sale was had.

We are then confronted with the question of whether or not Jarvis and Jones, who are also purchasers pendente lite, had actual notice concerning the mortgages and the pending litigation. At the outset it is remarked that these men took a quitclaim deed. In the case of Kentucky River Coal Corp. v. Swift Coal & Timber Co., 221 Ky. 593, 299 S.W. 201, 202, we quoted with approval this statement from 7 R.C.L. 1129: " 'Ordinarily, where a vendee receives but a special warranty or quitclaim conveyance, he takes the estate, subject to all the disadvantages that it was liable to in the hands of the vendor, and the law will presume notice of all incumbrances, either legal or equitable. The circumstances of a vendor refusing to make a full and ordinary assurance is said to be sufficient to excite suspicion, and put the party upon inquiry.' "

■ In addition, the proof is sufficient in this case to show actual notice on the part of Jarvis and Jones of the true condition of the title because Jones testified that he had been a son-in-law of Kelsey for about 25 years, that Jarvis was also a son-in-law, and that he knew of the pending litigation.

■ In light of the foregoing facts, it may be seen that neither J. C. Lay nor appellants were necessary parties to the suit to enforce the terms of the mortgage. Section 23 of the Civil Code of Practice reads: "Any person may be made a defendant who claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination of the question involved in the action." At the time the suit was instituted, the interested persons were made parties and the mortgagor could not defeat the enforcement of the lien by conveying away his interest after suit was filed. If the converse were true, it would be possible for a mortgagor to prevent the conclusion of such a suit by successive conveyances because each time it would be necessary for new parties to be joined for process to issue and for time to be allowed within which the new parties might file answer. It is plain from the provisions of KRS 382.440 that protection was offered only to those who had no knowledge of the pending mortgages or litigation. The purpose of the statute is to protect the innocent and not to afford a means of harrassing the mortgagee in his attempt to enforce his lien against the property.

■ In regard to plaintiffs' second contention that a statute of limitations ran after suit was filed, we think it is sufficient to say that the filing of the suit tolled the running of the statute.

Wherefore, the judgment is affirmed.